**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NORTH CAROLINA**
**NEW BERN DIVISION**

IN RE:
**MARIE JOCELINE BEAUCHAMP**          **CASE NO.  20-02446-5-DMW**
**JAMES LAWRENCE BEAUCHAMP**          **CHAPTER 13**
          **DEBTORS**

**MOTION FOR RELIEF FROM AUTOMATIC STAY (REAL PROPERTY)**
**OR IN THE ALTERNATIVE ADEQUATE PROTECTION**

Community Loan Servicing, LLC fka Bayview Loan Servicing, LLC ("Creditor"), a secured creditor in the above-captioned case, hereby moves this Court, pursuant to 11 U.S.C. § 362, for relief from the automatic stay or in the alternative for adequate protection with respect to certain property having an address of 405 Bordeaux Street, Jacksonville, NC 28546 (the "Property"), for all purposes allowed by the Note (defined below), the Deed of Trust (defined below), and applicable law, including but not limited to the right to foreclose. In further support of this Motion, Creditor respectfully states:

1.      On or about July 6, 2020 (the "Petition Date"), Marie Joceline Beauchamp and James Lawrence Beauchamp (the "Debtors"), filed a petition under Chapter 13 of Title 11 of the U.S. Code.

2.      This Court has jurisdiction to hear this matter and enter a final order pursuant to 28 U.S.C. §§ 157 and 1334; and 11 U.S.C. § 362.

3.      On or about April 30, 2007, James L Beauchamp and Jocelyn M Beauchamp executed that certain Note in the original principal amount of $37,228.43 (the "Note"). A copy of the Note is attached hereto as Exhibit "A."

4.     Pursuant to that certain Deed of Trust recorded in the Onslow County, NC Register of Deeds in Book 2866 at Page 440 (the "Deed of Trust"), all amounts owed under and with respect to the Note (the "Obligation") are secured by the Property. A copy of the Deed of Trust is attached hereto as Exhibit "B."

5.     Community Loan Servicing, LLC fka Bayview Loan Servicing, LLC services the Obligation. In the event the automatic stay is modified, this case dismisses, and/or the Debtors obtain a discharge and a foreclosure action is commenced on the Property, the foreclosure will be conducted in the name of Community Loan Servicing, LLC fka Bayview Loan Servicing, LLC. Creditor is the original mortgagee or beneficiary or the assignee of the security instrument for the referenced loan. Creditor, directly or through an agent, has possession of the Note.

6.     A Chapter 13 Plan was confirmed on September 18, 2020. The terms of the confirmed plan provide for the payment of Creditor as a conduit mortgage claim with the first conduit payment to be applied to September 12, 2020.

7.     The Debtors defaulted in the Chapter 13 plan payments. Therefore, creditor is not receiving payments from the Chapter 13 Trustee.

8.     The following chart sets forth the number and amount of post-petition payments due pursuant to the terms of the Note that have been missed as of April 13, 2021:

| Number of Missed Payments | From | To | Monthly Payment Amount | Total Amounts Delinquent |
|---|---|---|---|---|
| 4 | January 12, 2021 | April 12, 2021 | $547.99 | $2,191.96 |
| Less partial payments (suspense balance): $0.00 | | | | |

**Total: $2,191.96****

9.     A payment history is attached hereto as Exhibit "C."

10.     The estimated market value of the Property is $96,000.00.  The basis for such valuation is the Debtors Schedules.

11.     Upon information and belief, the payoff amount as of April 13, 2021 is $38,119.59.

12.     Cause exists for relief from the automatic stay pursuant to 11 U.S.C. § 362(d)(1) because Creditor's interest in the Property is not adequately protected.

WHEREFORE, Creditor prays that this Court issue an Order terminating or modifying the stay and granting the following:

1.     Relief from the stay for all purposes allowed by the Note, the Deed of Trust, and applicable law, including but not limited to allowing Creditor (and any successors or assigns) to proceed under applicable non-bankruptcy law to enforce its remedies to foreclose upon and obtain possession of the Property and any and all other collateral pledged under the Deed of Trust.

2.      Creditor specifically requests permission to communicate with the Debtors and Debtors' counsel to the extent necessary to comply with applicable nonbankruptcy law.

3.     That Creditor be entitled to recover its reasonable fees and expenses incurred in connection with seeking the relief requested in this Motion.

4.     In the alternative, Creditor requests that this Court enter an order providing Creditor with adequate protection of its interests in the Property.

5.      For such other relief as the Court deems proper.

This is the 18th day of May, 2021.

*/s/ Ryan Srnik*
Ryan Srnik
(Bar No. 53715)
Attorney for Creditor
BROCK & SCOTT, PLLC
4700 Falls of Neuse Road
Suite 350
Raleigh, NC 27609
Telephone:  919-872-5466
Facsimile:  704-369-0760
E-Mail:  ncbkr@brockandscott.com

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NORTH CAROLINA**
**NEW BERN DIVISION**

IN RE:
**MARIE JOCELINE BEAUCHAMP**          **CASE NO.  20-02446-5-DMW**
**JAMES LAWRENCE BEAUCHAMP**          **CHAPTER 13**
                    **DEBTORS**

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies under penalty of perjury that he/she is over eighteen (18) years of age and that the MOTION FOR RELIEF FROM AUTOMATIC STAY in the above captioned case were this day served upon the below named persons by mailing, postage prepaid, first class mail a copy of such instrument to each person(s), parties, and/or counsel at the addresses shown below:

Marie Joceline Beauchamp                    Christian Bennett Felden
405 Bordeaux St                             Felden and Felden, P.A.
Jacksonville, NC 28540-5418                 P.O. Box 1399
                                            Jacksonville, NC 28541-1399

James Lawrence Beauchamp                    Joseph A. Bledsoe, III
405 Bordeaux St                             PO Box 1618
Jacksonville, NC 28540-5418                 New Bern, NC 28563

This is the 18th day of May, 2021.

                                    */s/ Ryan Srnik*
                                    Ryan Srnik
                                    (Bar No. 53715)
                                    Attorney for Creditor
                                    BROCK & SCOTT, PLLC
                                    4700 Falls of Neuse Road
                                    Suite 350
                                    Raleigh, NC 27609
                                    Telephone:  919-872-5466
                                    Facsimile:  704-369-0760
                                    E-Mail:  ncbkr@brockandscott.com

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NORTH CAROLINA**
**NEW BERN DIVISION**

IN RE:
**MARIE JOCELINE BEAUCHAMP**          **CASE NO.  20-02446-5-DMW**
**JAMES LAWRENCE BEAUCHAMP**          **CHAPTER 13**
                    **DEBTORS**

**NOTICE OF MOTION**

TO THE DEBTORS, DEBTORS' ATTORNEY, TRUSTEE, AND ALL PARTIES IN
INTEREST

THIS NOTICE IS HEREBY GIVEN of a Motion for Relief from Automatic Stay filed
simultaneously herewith in the above-captioned case, a copy of which is attached hereto, and;

NOTICE IS FURTHER GIVEN that this motion may be allowed pursuant to 11 U.S.C.
§362 provided no response and request for a hearing is made by the parties in interest in writing
to the Clerk of Court within FOURTEEN (14) DAYS from the date of this notice, and;

NOTICE IS FURTHER GIVEN that if a response and request for a hearing is filed by a
party in interest named herein, in writing within the time indicated, a hearing will be conducted
on the motion and response at a date and time to be later set by the Court and all parties will be
notified accordingly.  If no response for a hearing is timely filed, the Court may rule on the
Motion ex-parte without further notice.  Any party requesting a hearing shall appear at the
hearing in support of such an objection or may be assessed with costs of Court.

This is the 18th day of May, 2021.

/s/ Ryan Srnik
Ryan Srnik
(Bar No. 53715)
Attorney for Creditor
BROCK & SCOTT, PLLC
4700 Falls of Neuse Road
Suite 350
Raleigh, NC 27609
Telephone:  919-872-5466
Facsimile:  704-369-0760
E-Mail:  ncbkr@brockandscott.com



# Disclosure Statement, Note and Security Agreement

| Borrower(s) (Name and mailing address) | Lender (Name, address, city and state) | Account No. |
|---|---|---|
| JAMES L BEAUCHAMP<br>JOCELYN M BEAUCHAMP<br>405 BORDEAUX STREET<br>JACKSONVILLE NC 28546 | CITIFINANCIAL SERVICES,<br>INC.<br>115 WESTERN BLVD.<br>JACKSONVILLE, NC 28546 | Date of Loan<br>04/30/2007 |

| ANNUAL PERCENTAGE RATE<br>The cost of Borrower's credit as a yearly rate.<br><br>12.00   % | FINANCE CHARGE<br>The dollar amount the credit will cost Borrower.<br><br>$   43,483.09 | Amount Financed<br>The amount of credit provided to Borrower or on Borrower's behalf<br><br>$   37,228.43 | Total of Payments<br>The amount Borrower will have paid after Borrower has made all payments as scheduled.<br><br>$   80,711.52 |
|---|---|---|---|

**Payment Schedule:**

| Number of Payments | * Amount of Payments | When Payments Are Due |
|---|---|---|
| 181 | $   445.92 | MONTHLY BEGINNING 06/04/2007 |
| | $ | |
| | $ | |
| | $ | |

See the contract documents for any additional information about nonpayment, default, any required repayment in full before the scheduled date, and prepayment refunds and penalties.

**Security:** If checked, Borrower is giving a security interest in:
[X] Real Property   [ ] Mobile Home or Manufactured Home

Late Charge: NONE.

Prepayment: If Borrower pays off early, Borrower:
[X] will not   [ ] may   have to pay a penalty and will not be entitled to a refund of part of the finance charge.

* Does not include any insurance premium.

**Additional Information:**

| Total amount of first month's payment including insurance premiums, if any. | PRINCIPAL | FEES | DATE CHARGES BEGIN |
|---|---|---|---|
| $ 445.92 | $   37,228.43 | $   NONE | 05/04/2007 |

**Required Insurance Disclosure:**

If Borrower grants Lender a security interest as indicated in this document, insurance to protect the Lender's interest in the collateral may be required. If this loan is secured by real property, or mobile/manufactured home, then fire, extended coverage, collision and/or comprehensive casualty insurance is required naming Lender as loss payee, until the loan is fully paid. The amount of such insurance must be sufficient to satisfy the unpaid balance of the loan, or be equal to the value of the collateral, whichever is less. Such insurance may be provided through an existing policy or a policy obtained independently and purchased by Borrower. Borrower may obtain such insurance from any insurer that is reasonably acceptable to Lender.

**Optional Insurance Disclosure:**

Borrower is not required to purchase optional insurance products, such as: Credit Life, Credit Disability, Involuntary Unemployment Insurance or any other optional insurance products. Lender's decision to grant credit will not be affected by Borrower's decision to purchase or decline to purchase optional insurance.

Coverage will not be provided unless Borrower signs and agrees to pay the applicable monthly premium in addition to the monthly loan payment disclosed above.

Borrower should refer to the terms contained in the applicable certificate or policy of insurance issued for the exact description of benefits, exclusions and premium rates.

If Borrower purchases insurance, Borrower's monthly payment will include both the monthly loan payment disclosed above and the applicable monthly premiums.

I/We request the following insurance:

| Premium Due with the First Month's Loan Payment | First Year's Premium * | Insurance Type: |
|---|---|---|
| $   NONE | $ | |
| $   NONE | $ | |
| $   NONE | $ | |

First Borrower's Signature _____   Date 4/30/07

Second Borrower's Signature _____   4/30/07

( * First year's premiums are calculated on the assumption that monthly loan payments are timely made. Accrued but unpaid premium, if not paid earlier, will be due and payable at the time of the final payment on the loan. However, failure to pay premiums may result in termination of insurance as described below.

**Termination of Insurance:**

Borrower may cancel any of the optional insurance products office at any time. The optional insurance will terminate upon the earliest of the following occurrences:

(1) the Lender's receipt of Borrower's written request for termination;
(2) on the date when the sum of past due premiums equal or exceed four times the first month premium;
(3) termination pursuant to the provisions of the insurance certificate;
(4) payment in full of Borrower's Loan;
(5) death of Borrower.

**TERMS:** In this Disclosure Statement, Note and Security Agreement, the word "Borrower" refers to the persons signing below as Borrower, whether one or more. If more than one borrower signs, each will be responsible, individually and together, for all promises made and for repaying the loan in full. The word "Lender" refers to the lender, whose name and address are shown above.

**PROMISE TO PAY:** In return for a loan that Borrower has received, Borrower promises to pay to the order of Lender the Principal amount shown above, plus interest on the unpaid Principal balance from the Date Charges Begin shown above at the rate of interest of   12.00   % per annum. Lender will compute interest on the unpaid Principal balance on a daily basis from the date charges begin until Borrower repays the loan. If Borrower does not make sufficient or timely payments according to the payment schedule above, Borrower will incur greater interest charges on the loan. On the N/A   month anniversary of the Date of Loan shown above, the rate of interest applicable to the remaining unpaid principal balance shall decrease N/A   % per annum.

Any amount shown above as Fees has been paid by Borrower as fees. This amount is considered a prepaid charge and is in addition to interest calculated at the above Rate(s) of Interest. Any Fees are earned prior to any other interest on the loan balance. In the event of prepayment of the loan, prepaid Fee will not be refundable to Borrower.

Borrower's Initials: _____

_____ Fixed R/E          **Original (Branch)**          **Copy (Customer)**          Page 1 of 3

JAMES L BEAUCHAMP     JOCELYN M BEAUCHAMP                                         04/30/2007

Principal and interest shall be payable in the monthly installments shown above, except that any appropriate adjustments will be made to the first and final payments, beginning on the first payment date shown above and continuing on the same day in each following month until paid in full unless this loan is subject to a call provision as indicated, in which event the final payment date may be accelerated. Upon the final payment date or the acceleration thereof, the entire outstanding balance of Principal and interest evidenced by this Disclosure Statement, Note and Security Agreement shall be due and payable. Any payment which Lender accepts after the final payment date or the acceleration thereof does not constitute a renewal or extension of this loan unless Lender so determines.

Each payment shall be applied as follows: (1) monthly loan payments due (first to interest then principal), (2) insurance premiums due, (3) unpaid interest to the date of payment, if any, then (4) principal. Lender may collect interest from and after maturity upon the unpaid Principal balance at the maximum rate permitted under the then applicable law or the rate of interest prevailing at the time of maturity under this Disclosure Statement, Note and Security Agreement.

PREPAYMENT: Borrower may make a full or partial prepayment of the unpaid Principal balance at any time (check applicable box):

[X] without penalty.

[ ] if Borrower prepays the entire outstanding Principal amount of this loan within 30 months of the date of the loan, Lender may charge Borrower a prepayment penalty of 1% of the balance outstanding at the time of the prepayment in full. If prepaid after that date, there will be no prepayment fee.

When Borrower makes a prepayment, Borrower will tell Lender in a letter that Borrower is doing so. Lender will use Borrower's prepayments to reduce the amount of unpaid interest and charges and the amount of principal that Borrower owes under this Note. Partial prepayment will not affect the amount or due date of subsequent scheduled payments on the loan, unless Lender agrees in writing to any such delay or change, but may reduce the number of such payments. Upon partial prepayment, interest will continue to accrue on any remaining Principal balance. Borrower understands if the terms of this paragraph provide for a prepayment penalty, such terms do not apply to a renewal or refinancing of this loan by Lender, nor to the prepayment of this loan from the proceeds of any loan made in the future by Lender to Borrower. No prepayment charge will be collected if the loan is accelerated due to Borrower's default or due to Lender's exercise of any due on sale clause in the Deed of Trust securing this obligation.

### SECURITY AGREEMENT:

SECURITY: Borrower's loan is secured by a Mortgage, Deed of Trust or Deed to Secure Debt dated 04/30/2007 on real property located at
405 BORDEAUX STREET  JACKSONVILLE, NC  28546
See the Mortgage, Deed of Trust or Deed to Secure Debt for terms applicable to Lender's interest in Borrower's real property ("Property").

TAXES AND FEES: Borrower will pay all taxes, assessments, and other fees payable on the Property. If Borrower fails to pay such amounts, Lender may pay such amounts for Borrower and the amounts paid by Lender will be added to the unpaid balance of the loan.

INSURANCE: If Borrower purchases any insurance at Lender's office, Borrower understands and acknowledges that (1) the insurance company may be affiliated with Lender, (2) Lender's employee(s) may be an agent for the insurance company, (3) such employee(s) is not acting as the agent, broker or fiduciary for Borrower on this loan, but may be the agent of the insurance company, and (4) Lender or the insurance company may realize some benefit from the sale of that insurance. If Borrower fails to obtain or maintain any required insurance or fails to designate an agent through whom the insurance is to be obtained, Lender may purchase such required insurance for Borrower through an agent of Lender's choice, and the amounts paid by Lender will be added to the unpaid balance of the loan.

RETURNED CHECK FEE: Lender may charge a fee of $  25.00  for a check, negotiable order of withdrawal or draft is returned for insufficient funds or insufficient credit.

LOAN CHARGES: If a law that applies to this loan and that sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then (i) any such loan charge will be reduced by the amount necessary to reduce the charge to the permitted limit, and (ii) any sums already collected from Borrower that exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under this loan or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge.

DEFAULT: Borrower will be in default if:
1. Borrower does not make any scheduled payment on time;
2. Borrower is (or any other person puts Borrower) in bankruptcy, insolvency or receivership;
3. Any of Borrower's creditors attempts by legal process to take and keep any property of Borrower, including the Property securing this loan;
4. Borrower fails to fulfill any promise made under this agreement; or
5. A default occurs under any Real Estate Mortgage or Deed of Trust which secures this loan or under any other mortgage or deed of trust on the real property.

Subject to Borrower's right to any notice of default, right to cure default, and any other applicable laws, if Borrower defaults, Lender may require Borrower to repay the entire unpaid Principal balance and any accrued interest at once. Lender's failure to exercise or delay in exercising any of its rights when default occurs does not constitute a waiver of those or any other rights under this agreement. Borrower promises and agrees to pay all cost charges and expenses, including court costs and reasonable attorney's fees paid to an attorney who is not a salaried employee of Lender, incurred by Lender in any action to collect or enforce this Disclosure Statement, Note and Security Agreement or the Mortgage or Deed of Trust securing this loan.

EFFECTS OF DEFAULT: If Borrower defaults, Borrower will deliver the Property to Lender or, upon Lender's demand, assemble the Property and make it available to Lender at a reasonably convenient place. Lender may, without previous notice or demand and without legal process, peacefully enter any place where the Property is located and take possession of it. Lender does not have to notify Borrower before instituting suit if the note is not paid, and Lender can sue any or all Borrowers upon default of any Borrower.

The Property may be sold with notice at a private or public sale at a location chosen by Lender. At such public sale, Lender may purchase the Property. The proceeds of the sale minus the actual and reasonable costs of taking, removing, holding, repairing, and selling the Property, including reasonable attorney's fees and court costs and minus the cost of paying off and removing any superior liens or claims on the Property, will be credited to the unpaid balance of Borrower's loan. If the proceeds of the sale are not sufficient to pay off the entire balance plus costs, Borrower agrees to pay the remaining amount upon demand. If Borrower has left other property in the repossessed Property, Lender may hold such property temporarily for Borrower without any responsibility or liability for the property. Borrower waives benefit of homestead and exemption laws now in force or later enacted, including stay of execution and condemnation, on any property securing this loan, and waive the benefit of valuation and appraisement.

Notice of the time and place of a public sale or notice of the time after which a private sale will occur is reasonable if mailed to the Borrower's address at least five days before the sale. The notice may be mailed to Borrower's last address shown on Lender's records.

LAW THAT APPLIES: North Carolina law and federal law, as applicable, govern this Disclosure Statement, Note and Security Agreement. If any part is unenforceable, this will not make any other part unenforceable. In no event will Borrower be required to pay interest or charges in excess of those permitted by law.

OTHER RIGHTS: Lender may accept payments after maturity or after a default without waiving its rights with respect to any subsequent default in payment. Borrower agrees that Lender may extend time for payment after maturity without notice. The terms of this agreement can be waived or changed only in a writing signed by Lender.

Where the context requires, singular words may be read in the plural and plural words in the singular. References to the masculine gender may be read to apply to the feminine gender.

Borrower's Initials:

JAMES L BEAUCHAMP    JOCELYN M BEAUCHAMP    04/30/2007

OTHER TERMS: Each Borrower under this Disclosure Statement, Note and Security Agreement, if more than one, agrees that Lender may obtain approval from one Borrower to change the repayment terms and release any Property securing the loan, or add parties to or release parties from this agreement, without notice to any other Borrower and without releasing any other Borrower from his responsibilities. Lender does not have to notify Borrower before instituting suit if the loan is not paid, and Lender can sue any or all Borrowers upon the default by any Borrower.

Borrower, endorsers, sureties and guarantors, to the extent permitted by law, severally waive their right to require Lender to demand payment of amounts due, to give notice of amounts that have not been paid, to receive notice of any extensions of time to pay which Lender allows to any Borrower and to require Lender to show particular diligence in bringing suit against anyone responsible for repayment of this loan, and additionally, waive benefit of homestead and exemption laws now in force or later enacted, including stay of execution and condemnation, on any Property securing this loan and waive the benefit of valuation and appraisement.

This Disclosure Statement, Note and Security Agreement shall be the joint and several obligation of all makers, sureties, guarantors and endorsers and shall be binding upon them, their heirs, successors, legal representatives and assigns.

REFINANCING: The overall cost of refinancing an existing loan balance may be greater than the cost of keeping the existing loan and obtaining a second loan for any additional funds Borrower wishes to borrow.

AUTHORIZATION TO USE CREDIT REPORT: By signing below, Borrower authorizes Lender to obtain, review and use information contained in the Borrower's credit report in order to determine whether the Borrower may qualify for products and services offered by Lender. This authorization terminates when Borrower's outstanding balance due under this Disclosure Statement, Note and Security Agreement is paid in full. Borrower may cancel such authorization at any time by writing the following: Transaction Processing, 300 St. Paul Place, BSP13A, Baltimore, MD 21202. In order to process Borrower's request, Lender must be provided Borrower's full name, address, social security number and account number.

The following notice applies only if this box is checked. ☐

## NOTICE

**ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.**

By signing below, Borrower agrees to the terms contained herein, acknowledges receipt of a copy of this Disclosure Statement, Note and Security Agreement and, if applicable, the Mortgage or Deed of Trust and of the accompanying Itemization of Amount Financed, and authorizes the disbursements stated therein.

WITNESSES:

SIGNED:

_____    JAMES L BEAUCHAMP                (Seal)
                                                            -Borrower
_____    JOCELYN M BEAUCHAMP             (Seal)
                                                            -Borrower
                                                             (Seal)
                                                            -Borrower

CITIFINANCIAL SERVICES, INC.

By: SC GREEN BM
(Name and Title)    04/30/2007  19:05:25

SECURITY INTEREST OF NONOBLIGOR: Borrower only is personally liable for payment of the loan. Nonobligor is liable and bound by all other terms, conditions, covenants, and agreements contained in this Disclosure Statement, Note and Security Agreement, including but not limited to the right and power of Lender to repossess and sell the Property securing this loan, in the event of default by Borrower in payment of this loan.

_____ (Seal) _____    _____ (Seal) _____
Signature                  Date              Signature                  Date

## ALLONGE TO NOTE

Original Loan Amount: $37,228.43
Note Date:             04/30/2007
Borrower(s):           JAMES L. BEAUCHAMP AND JOCELYN M. BEAUCHAMP
Address:               405 BORDEAUX STREET
                       JACKSONVILLE, NC 28546-0000

### PAY TO THE ORDER OF

CITIFINANCIAL SERVICING LLC, A DELAWARE LIMITED LIABILITY COMPANY

### WITHOUT RECOURSE

CFNA RECEIVABLES (MD), INC., A MARYLAND CORPORATION, SUCCESSOR BY MERGER TO CFNA
RECEIVABLES (DE), INC. F/K/A CITIFINANCIAL SERVICES, INC., A DELAWARE CORPORATION

By: _____         Dated: _____ FEB 2 8 2017 _____
Name: **Alan Baker**
Title: **VICE PRESIDENT**

### PAY TO THE ORDER OF

_____

_____

_____

### WITHOUT RECOURSE

CITIFINANCIAL SERVICING LLC, A DELAWARE LIMITED LIABILITY COMPANY

By: _____         Dated: _____ FEB 2 8 2017 _____
Name: **Ercilia Green**
Title: **VICE PRESIDENT**



This Rider Amends The Loan Agreement/Promissory Note Entered Into On Date Below

## Agreed Rate Reduction Rider

| Borrower(s) (Name and mailing address) | Lender (Name, address, city and state) | Account No. |
|---|---|---|
| JAMES L BEAUCHAMP<br>JOCELYN M BEAUCHAMP<br>405 BORDEAUX STREET<br>JACKSONVILLE NC 28546 | CITIFINANCIAL SERVICES, INC.<br>115 WESTERN BLVD.<br>JACKSONVILLE, NC 28546 | **▉**<br>Date of Loan<br>04/30/2007 |

Borrower has agreed to pay the rate of interest set forth in the Note (the "Note Rate") until the full amount of principal has been paid. However, if on any one of the second, third or fourth anniversaries of the scheduled due date of the first full installment payment due date under the Note (each, an "Anniversary Date") Borrower has demonstrated a Good Payment History, Lender agrees to decrease the Note Rate to     11.00   %. Borrower will be deemed to have demonstrated a "Good Payment History" if Borrower: (a) has made each of the most recent 24 consecutive monthly payments under the Note before the date the next payment was due; (b) has never been late by 91 days or more in making any monthly payments due under the Note; (c) neither Borrower nor Co-Borrower has filed petitions in bankruptcy during the term of the loan; and (d) no provision of the Note has been modified prior to the Anniversary Date. Modifications to the Note include deferment of a scheduled payment, legal action with respect to enforcement of the Note or the Mortgage, and an adjustment of the loan terms. If Borrower demonstrates a Good Payment History, the new Note Rate will take effect one month after the earliest Anniversary Date on which Borrower has demonstrated a Good Payment History ("Rate Reduction Date"). Beginning with Borrower's first monthly payment after the Rate Reduction Date, Borrower will pay the new amount as the monthly payment until the Maturity Date. Lender will decrease Borrower's Note Rate only one time during the term of the loan, provided Borrower demonstrates a Good Payment History on any one of the second, third, or fourth Anniversary Dates.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this Agreed Rate Reduction Rider.

_____
Borrower

_4/30/07_____
Date

_____
Co-Borrower

_4/30/07_____
Date



```
Recorded: 05/02/2007 at 03:26:00 PM   Type: CRP
Fee Amt: $35.00 Page 1 of 8
Onslow County, NC
Maryland K. Washington Reg. of Deeds
BK2866 PG440-447
```

# DEED OF TRUST

| SATISFACTION: The debt secured by the within Deed of Trust together with the Note secured thereby has been satisfied in full. | Recording: Time, Book and Page |
|---|---|
| This the _____ day of_____, _____. | |
| Signed: _____ | |
| By: _____ | |
| **Tax Parcel Identifier No.**     _____ | |
| **This Instrument prepared by:** S C GREEN | |
| **Mail after recording to:**     CITIFINANCIAL SERVICES, INC.<br>115 WESTERN BLVD.<br>JACKSONVILLE, NC 28546 | |

THIS DEED OF TRUST ("Security Instrument") is made on 04/30/2007 . The grantor is JAMES L. BEAUCHAMP   MARRIED JOCKLYNE M. BEAUCHAMP MARRIED

("Borrower"). The trustee is
S C GREEN
("Trustee"). The beneficiary is CITIFINANCIAL SERVICES, INC.
, which is a corporation organized and existing                                under the laws of
Delaware           , and whose address is
115 WESTERN BLVD.   JACKSONVILLE, NC 28546
("Lender").

Borrower owes Lender the principal sum of
THIRTY-SEVEN THOUSAND TWO HUNDRED TWENTY-EIGHT AND 43/100 DOLLARS
Dollars (U.S. $ 37,228.43). This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which provides for monthly payments, with the full debt, if not paid earlier, due and payable on 06/04/2022 . This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all renewals, extensions and modifications; (b) the payment of all other sums, with interest, advanced under paragraph 7 to protect the security of this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee and Trustee's successors and assigns, in trust, with power of sale, the following described property located in             ONSLOW County, North Carolina:

(Intentionally Left Blank)

Original(Recorded) Copy(Branch) Copy(Customer)   Page 1 of 7

JAMES L BEAUCHAMP      JOCELYN M BEAUCHAMP

04/30/2007

SEE EXHIBIT "A"

TO HAVE AND TO HOLD unto Trustee and Trustee's successors and assigns, forever, together with all the improvements now or hereafter erected on the property, and all easements, rights, appurtenances, rents, royalties, mineral, oil and gas rights and profits, water rights and stock and all fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. **Payment of Principal and Interest; Prepayment and Late Charges.** Borrower shall promptly pay when due the principal of and interest on the debt evidenced by the Note and any prepayment and late charges due under the Note.

2. **Funds for Taxes and Insurance.** Subject to applicable law or to a written waiver by Lender, borrower shall pay to Lender on the day monthly payments are due under the Note, until the Note is paid in full, a sum ("Funds") equal to one-twelfth of: (a) yearly taxes and assessments which may attain priority over this Security Instrument; (b) yearly leasehold payments or ground rents on the Property, if any; (c) yearly hazard insurance premiums; and (d) yearly mortgage insurance premiums, if any. These items are called "escrow items." Lender may estimate the Funds due on the basis of current data and reasonable estimates of future escrow items.

The Funds shall be held in an institution the deposits or accounts of which are insured or guaranteed by a federal or state agency (including Lender if Lender is such an institution). Lender shall apply the Funds to pay the escrow items. Lender may not charge for holding and applying the Funds, analyzing the account or verifying the escrow items, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. Borrower and Lender may agree in writing that interest shall be paid on the Funds. Unless an agreement is made or applicable law requires interest to be paid, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for the sums secured by this Security Instrument.

If the amount of the Funds held by Lender, together with the future monthly payments of Funds payable prior to the due dates of the escrow items, shall exceed the amount required to pay the escrow items when due, the excess shall be, at Borrower's option, either promptly repaid to Borrower or credited to Borrower on monthly payments of Funds. If the amount of the Funds held by Lender is not sufficient to pay the escrow items when due, Borrower shall pay to Lender any amount necessary to make up the deficiency in one or more payments as required by Lender.

riginal (Recorded)  Copy (Branch)  Copy (Customer)  Page 2 of 7

JAMES L BEAUCHAMP    JOCELYN M BEAUCHAMP

04/30/2007

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender. If under paragraph 19 the Property is sold or acquired by Lender, Lender shall apply, no later than immediately prior to the sale of the Property or its acquisition by Lender, any Funds held by Lender at the time of application as a credit against the sums secured by this Security Instrument.

3. Application of Payments. Unless applicable law provides otherwise, all payments received by Lender under paragraphs 1 and 2 shall be applied: first, to late charges due under the Note; second, to prepayment charges due under the Note; third, to amounts payable under paragraph 2; fourth, to interest due; and last, to principal due.

4. Charges; Liens. Borrower shall pay all taxes, assessments, charges, fines and impositions attributable to the Property which may attain priority over this Security Instrument, and leasehold payments or ground rents, if any. Borrower shall pay these obligations in the manner provided in paragraph 2, or if not paid in that manner, Borrower shall pay them on time directly to the person owed payment. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this paragraph. If Borrower makes these payments directly, Borrower shall promptly furnish to Lender receipts evidencing the payments.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien or forfeiture of any part of the Property; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

5. Hazard Insurance. Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage" and any other hazards for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's approval which shall not be unreasonably withheld.

All insurance policies and renewals shall be acceptable to Lender and shall include a standard mortgage clause. Lender shall have the right to hold the policies and renewals. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.

Unless Lender and Borrower otherwise agree in writing, insurance proceeds shall be applied to restoration or repair of the Property damaged, if the restoration or repair is economically feasible and Lender's security is not lessened. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. If Borrower abandons the Property, or does not answer within 30 days a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may collect the insurance proceeds. Lender may use the proceeds to repair or restore the Property or to pay sums secured by this Security Instrument, whether or not then due. The 30-day period will begin when the notice is given.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of the payments. If under paragraph 19 the Property is acquired by Lender, Borrower's right to any insurance policies and proceeds resulting from damage to the Property prior to the acquisition shall pass to Lender to the extent of the sums secured by this Security Instrument immediately prior to the acquisition.

6. Preservation and Maintenance of Property; Leaseholds. Borrower shall not destroy, damage or substantially change the Property, allow the Property to deteriorate or commit waste. If this Security Instrument is on a leasehold, Borrower shall comply with the provisions of the lease, and if Borrower acquires fee title to the Property, the leasehold and fee title shall not merge unless Lender agrees to the merger in writing.

7. Protection of Lender's Rights in the Property; Mortgage Insurance. If Borrower fails to perform the covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, probate, for condemnation or to enforce laws or regulations), then Lender may do and pay for whatever is necessary to protect the value of the Property and Lender's rights in the Property. Lender's actions may include paying any sums

JAMES L BEAUCHAMP    JOCELYN M BEAUCHAMP

04/30/2007

secured by a lien which has priority over this Security Instrument, appearing in court, paying reasonable attorneys' fees and entering on the Property to make repairs. Although Lender may take action under this paragraph 7, Lender does not have to do so.

Any amount disbursed by Lender under this paragraph 7 shall become additional debt of Borrower secured by this Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

If Lender required mortgage insurance as a condition of making the loan secured by this Security Instrument, Borrower shall pay the premiums required to maintain the insurance in effect until such time as the requirement for the insurance terminates in accordance with Borrower's and Lender's written agreement or applicable law.

**8. Inspection.** Lender or its agent may make reasonable entries upon and inspections of the Property. Lender shall give Borrower notice at the time of or prior to an inspection specifying reasonable cause for the inspection.

**9. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender.

In the event of a total taking of the Property, the proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. In the event of a partial taking of the Property, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the taking, divided by (b) the fair market value of the Property immediately before the taking. Any balance shall be paid to Borrower.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the condemnor offers to make an award or settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the proceeds, at its option, either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of such payments.

**10. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successors in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

**11. Successors and Assigns Bound; Joint and Several Liability; Co-signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 17. Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

**12. Loan Charges.** If the loan secured by this Security Instrument is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge under the Note.

JAMES L. BEAUCHAMP    JOCELYN M BEAUCHAMP

04/30/2007

**13. Legislation Affecting Lender's Rights.** If enactment or expiration of applicable laws has the effect of rendering any provision of the Note or this Security Instrument unenforceable according to its terms, Lender, at its option, may require immediate payment in full of all sums secured by this Security Instrument and may invoke any remedies permitted by paragraph 19. If Lender exercises this option, Lender shall take the steps specified in the second paragraph of paragraph 17.

**14. Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any other address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

**15. Governing Law; Severability.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

**16. Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

**17. Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**18. Borrower's Right to Reinstate.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earlier of: (a) 5 days (or such other period as applicable law may specify for reinstatement) before sale of the Property pursuant to any power of sale contained in this Security Instrument; or (b) entry of a judgment enforcing this Security Instrument. These conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note had no acceleration occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees; and (d) takes such action as Lender may reasonably require to assure that the lien of this Security Instrument, Lender's rights in the Property and Borrower's obligation to pay the sums secured by this Security Instrument shall continue unchanged.   Upon reinstatement by Borrower, this Security Instrument and the obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under paragraphs 13 or 17.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**19. Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in the Security Instrument (but not prior to acceleration under paragraph 13 and 17 unless applicable law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property.  The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and sale.  If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by applicable law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 19, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

Original(Recorded)  Copy(Branch)  Copy(Customer)   Page 5 of 7

JAMES L BEAUCHAMP    JOCELYN M BEAUCHAMP

04/30/2007

If Lender invokes the power of sale, and if it is determined in a hearing held in accordance with applicable law that Trustee can proceed to sale, Trustee shall take such action regarding notice of sale and shall give such notices to Borrower and to other persons as applicable law may require. After the time required by applicable law and after publication of the notice of sale, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to the expenses of the sale, including, but not limited to, Trustee's fees of 5 % of the gross sale price; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

**20. Lender in Possession.** Upon acceleration under paragraph 19 or abandonment of the Property, Lender (in person, by agent or by judicially appointed receiver) shall be entitled to enter upon, take possession of and manage the Property and to collect the rents of the Property including those past due. Any rents collected by Lender or the receiver shall be applied first to payment of the costs of management of the Property and collection of rents, including, but not limited to, receiver's fees, premiums on receiver's bonds and reasonable attorneys' fees, and then to the sums secured by this Security Instrument.

**21. Release.** Upon payment of all sums secured by this Security Instrument, Lender or Trustee shall cancel this Security Instrument without charge to Borrower. If Trustee is requested to release this Security Instrument, all notes evidencing debt secured by this Security Instrument shall be surrendered to Trustee. Borrower shall pay any recordation costs.

**22. Substitute Trustee.** Lender may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder by an instrument recorded in the county in which this Security Instrument is recorded. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by applicable law.

**23. Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants and agreements of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument.

**24. Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 24, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 24, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

BY SIGNING UNDER SEAL BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

_____ (Seal)
                                Borrower

_____ (Seal)
                                Borrower

JAMES L BEAUCHAMP     JOCELYN M BEAUCHAMP

04/30/2007

———————— [Space Below This Line For Acknowledgement] ————————

STATE OF NORTH CAROLINA, _____ *Onslow* _____ County ss:

I, _____ *S.C. GREEN* _____, a Notary Public of the County of
*Onslow* _____, State of North Carolina, do
hereby certify that _*JAMES L. BEAUCHAMP and JOCELYN M.*_
*BEAUCHAMP* _____ personally appeared before me this day and
acknowledged the due execution of the foregoing instrument.

Witness my hand and official seal this _30TH_ day of _APRIL_, 2007

My commission expires: _____
                                         Notary Public

_10-14-2017_
SEAL-STAMP

STATE OF NORTH CAROLINA - COUNTY OF _____

The foregoing certificate of _____, a Notary Public of
_____ County, North Carolina, is certified to be correct.

This the _____ day of _____, _____.

_____
Register of Deeds

This instrument was presented for registration this day and hour and duly recorded in the
office of the Register of Deeds of _____ County, N.C., in
Book _____, Page _____.

This the _____ day of _____, _____, at _____ o'clock _____ M.

_____
Register of Deeds

Original (Recorded)  Copy (Branch)  Copy (Customer)   Page 7 of 7

## EXHIBIT A

ALL THAT CERTAIN LOT OR PARCEL OF LAND SITUATED IN THE CITY OF JACKSONVILLE, JACKSONVILLE TOWNSHIP, ONSLOW COUNTY, NORTH CAROLINA AND MORE PARTICULARLY DESCRIBED AS FOLLOWS: LYING AND BEING IN THE TOWN OF JACKSONVILLE ON THE SOUTHWEST SIDE OF BORDEAUX STREET AND BEGINNING AT JOHN ANDREWS CORNER ON SAID BORDEAUX STREET, WHICH BEGINNING POINT IS SOUTH 37 DEGREES EAST 475 FEET FROM THE POINT WHERE EAST RAILROAD STREET INTERSECTS WITH THE SOUTHWESTWARD RIGHT OF WAY LINE OF BORDEAUX STREET, AND RUNNING THENCE WITH BORDEAUX STREET SOUTH 37 DEGREES EAST 25 FEET; THENCE CONTINUING WITH SAID STREET SOUTH 32 DEGREES 53 MINUTES EAST 35.1 FEET; THENCE SOUTH 53 DEGREES WEST 118.32 FEET; THENCE NORTH 40 DEGREES 16 MINUTES WEST 60.1 FEET TO JOHN ANDREWS CORNER; THENCE NORTH 53 DEGREES EAST 124.28 FEET TO THE BEGINNING, AND BEING A PART OF LOTS NO. 10 AND 11, IN BLOCK DEGREES OF THE MURRILL SUBDIVISION ACCORDING TO A MAP OF SAID SUBDIVISION WHICH IS RECORDED IN PLAT BOOK 1, AT PAGE 22, ONSLOW COUNTY REGISTRY.

BEING THE SAME FEE SIMPLE PROPERTY CONVEYED BY DEED FROM JOHN M. GAIESKI    and  DONNA L. GAIESKI  HUSBAND AND WIFE  TO JAMES L. BEAUCHAMP    and  JOCELYNE M. BEAUCHAMP  HUSBAND AND WIFE , DATED 02/15/1995 RECORDED ON 04/18/1995 IN BOOK 1234, PAGE 422 IN ONSLOW COUNTY RECORDS,  STATE OF NC.

Doc ID: 013394030001 Type: CRP
Recorded: 03/30/2017 at 04:11:34 PM
Fee Amt: $26.00 Page 1 of 1
Onslow County, NC
Rebecca L. Pollard Reg. of Deeds

BK **4596** PG **443**

**When Recorded Return To:**
CitiFinancial Servicing, LLC
C/O Nationwide Title Clearing, Inc.
2100 Alt. 19 North
Palm Harbor, FL 34683

## CORPORATE ASSIGNMENT OF DEED OF TRUST

**FOR GOOD AND VALUABLE CONSIDERATION,** the sufficiency of which is hereby acknowledged, the undersigned, **CFNA RECEIVABLES (MD), INC., A MARYLAND CORPORATION, SUCCESSOR BY MERGER TO CFNA RECEIVABLES (DE), INC. F/K/A CITIFINANCIAL SERVICES, INC., A DELAWARE CORPORATION, WHOSE ADDRESS IS C/O CITIMORTGAGE, INC., 1000 TECHNOLOGY DRIVE, O'FALLON, MO 63368, (ASSIGNOR),** by these presents does convey, grant, assign, transfer and set over the described Deed of Trust with all interest secured thereby, all liens, and any rights due or to become due thereon to **CITIFINANCIAL SERVICING LLC, A DELAWARE LIMITED LIABILITY COMPANY, WHOSE ADDRESS IS C/O CITIMORTGAGE, INC., 1000 TECHNOLOGY DRIVE, O'FALLON, MO 63368 (800)922-6235, ITS SUCCESSORS AND ASSIGNS, (ASSIGNEE).**

Said Deed of Trust is dated 04/30/2007, executed by **JAMES L. BEAUCHAMP AND JOCELYNE M. BEAUCHAMP** to **CITIFINANCIAL SERVICES, INC.** in the amount of $37,228.43, was recorded as **Book 2866, Page 440 and Document ID # 003875300008**, in the office of the Recorder of **ONSLOW** County, **North Carolina**.

Dated on ___3/24/2017 (MM/DD/YYYY)
**CFNA RECEIVABLES (MD), INC., A MARYLAND CORPORATION, SUCCESSOR BY MERGER TO CFNA RECEIVABLES (DE), INC. F/K/A CITIFINANCIAL SERVICES, INC., A DELAWARE CORPORATION**

By: _____
**Ivan Reina**
**VICE PRESIDENT**

All persons whose signatures appear above have qualified authority to sign and have reviewed this document and supporting documentation prior to signing.

STATE OF FLORIDA    COUNTY OF PINELLAS
The foregoing instrument was acknowledged before me on ___3/24/2017 (MM/DD/YYYY), by Ivan Reina as VICE PRESIDENT of CFNA RECEIVABLES (MD), INC., A MARYLAND CORPORATION, SUCCESSOR BY MERGER TO CFNA RECEIVABLES (DE), INC. F/K/A CITIFINANCIAL SERVICES, INC., A DELAWARE CORPORATION, who, as such VICE PRESIDENT being authorized to do so, executed the foregoing instrument for the purposes therein contained. He/she/they is (are) personally known to me.

_____
Elizabeth A. Mustard
Notary Public - State of FLORIDA
Commission expires: 08/27/2019

ELIZABETH A. MUSTARD
Notary Public - State of Florida
Commission # FF 224631
My Comm. Expires August 27, 2019

Document Prepared By: E.Lance/NTC, 2100 Alt. 19 North, Palm Harbor, FL 34683 (800)346-9152



Doc ID: 013384040001 Type: CRP
Recorded: 03/30/2017 at 04:11:35 PM
Fee Amt: $26.00 Page 1 of 1
Onslow County, NC
Rebecca L. Pollard Reg. of Deeds

BK **4596** PG **444**

When Recorded Return To:
CitiFinancial Servicing, LLC
C/O Nationwide Title Clearing, Inc.
2100 Alt. 19 North
Palm Harbor, FL 34683

## CORPORATE ASSIGNMENT OF DEED OF TRUST

**FOR GOOD AND VALUABLE CONSIDERATION**, the sufficiency of which is hereby acknowledged, the undersigned, **CITIFINANCIAL SERVICING LLC, A DELAWARE LIMITED LIABILITY COMPANY, WHOSE ADDRESS IS C/O CITIMORTGAGE, INC., 1000 TECHNOLOGY DRIVE, O'FALLON, MO 63368**, (ASSIGNOR), by these presents does convey, grant, assign, transfer and set over the described Deed of Trust with all interest secured thereby, all liens, and any rights due or to become due thereon to **BAYVIEW LOAN SERVICING, LLC, A DELAWARE LIMITED LIABILITY COMPANY, WHOSE ADDRESS IS 4425 PONCE DE LEON BLVD. 5TH FLOOR, CORAL GABLES, FL 33146** (800)771-0299, ITS SUCCESSORS AND ASSIGNS, (ASSIGNEE).

Said Deed of Trust is dated 04/30/2007, executed by **JAMES L. BEAUCHAMP AND JOCELYNE M. BEAUCHAMP** to **CITIFINANCIAL SERVICES, INC.** in the amount of $37,228.43, was recorded as **Book 2866, Page 440 and Document ID # 003875300008**, in the office of the Recorder of **ONSLOW** County, **North Carolina**.

Dated on __3/24__/2017 (MM/DD/YYYY)
**CITIFINANCIAL SERVICING LLC, A DELAWARE LIMITED LIABILITY COMPANY**

By: _____
Ivan Reina
**VICE PRESIDENT**

All persons whose signatures appear above have qualified authority to sign and have reviewed this document and supporting documentation prior to signing.

STATE OF FLORIDA    COUNTY OF PINELLAS
The foregoing instrument was acknowledged before me on __3/24__/2017 (MM/DD/YYYY), by Ivan Reina as VICE PRESIDENT of CITIFINANCIAL SERVICING LLC, A DELAWARE LIMITED LIABILITY COMPANY, who, as such VICE PRESIDENT being authorized to do so, executed the foregoing instrument for the purposes therein contained. He/she/they is (are) personally known to me.

_____
Elizabeth A. Mustard
Notary Public - State of FLORIDA
Commission expires: 08/27/2019

ELIZABETH A. MUSTARD
Notary Public - State of Florida
Commission # FF 224531
My Comm. Expires August 27,2019

Document Prepared By: E.Lance/NTC. 2100 Alt. 19 North. Palm Harbor. FL 34683 (800)346-9152

# ADJUSTMENT OF TERMS AGREEMENT

| Borrower(s) (Name and Address) | Lender (Name and Address) | Account No. |
|---|---|---|
| JAMES L BEAUCHAMP<br>JOCELYN M BEAUCHAMP<br>405 BORDEAUX STREET<br>JACKSONVILLE NC 28546 | CitiFinancial<br>115 WESTERN BLVD.<br><br>115 WESTERN BLVD.<br>JACKSONVILLE   NC   28546 | �increased<br>Date<br>04/02/2010 |

This Adjustment of Terms Agreement ("Agreement") is made this  04/02/2010  (the "Effective Date") by and between  JAMES L BEAUCHAMP  JOCELYN M BEAUCHAMP  , ("Borrower") and  CITIFINANCIAL SERVICES, INC.  to amend and supplement the Disclosure Statement, Note and Security Agreement, or Note, as applicable, (the "Note"), and applicable riders, if any, executed by Borrower dated  04/30/2007  in the original principal amount of $  37,228.43  .

Borrower acknowledges that Lender is the holder and the owner of the Note and understands the Lender may transfer the Note, as amended by this Agreement, and that anyone who takes the Note by transfer and who is entitled to receive payments under the Note is called the "Lender" in this Agreement.

[X] If checked, the Note is secured by real and/or personal property pursuant to a Mortgage, Deed of Trust, Deed to Secure Debt or other security agreement (the "Security Instrument") dated  04/30/2007  . Said Security Instrument conveys the real and/or personal property described in such security instrument (the "Property").

Borrower now requests to extend and rearrange the time and manner of repayment of the Note and to extend and carry forward the lien(s) on the Property, if any. Lender has agreed to Borrower's request.

For and in consideration of the mutual promises and agreements exchanged, the parties hereto agree as follows (notwithstanding anything to the contrary contained in the Note or Security Instrument):

1. Acknowledgement of Principal Balance: Borrower acknowledges that as of the Effective Date and except for the additional amounts described in paragraph below, the amount payable under the Note and secured by the Security Instrument, if any, is $ 36,544.20  ("Unpaid Principal Balance").

The Borrower acknowledges and agrees that in addition to the Unpaid Principal Balance described above, Borrower is currently obligated to Lender for additional charges in the amount of $ 755.51  herein referred to as the "Deferred Amount." This amount could include accrued and/or deferred interest advances made by Lender for real estate taxes and/or hazard insurance premiums ("Escrow Advances"), appraisal fees, attorney's costs and other legal fees if any, and any other unpaid fees that may have accrued under the terms of Note. The Deferred Amount has accrued or been incurred under the terms of the loan documents and/or Security Instrument or under the terms of this Agreement.

The Deferred Amount is in addition to the Unpaid Principal Balance. The Deferred Amount shall continue to be due and owing by Borrower to Lender in accordance with the terms of the Note, the Security Instrument, and this Agreement; provided however, Lender agrees that for so long as Borrower makes principal and interest payments in a timely manner and ultimately pays the Deferred Amount to the extent obligated under the terms of Note and Security Instrument, Lender will not seek to enforce its right to collect under the Note or Security Instrument solely for the failure to pay the Deferred Amount.   If not sooner demanded, the Deferred Amount shall be due and payable upon the earlier of voluntary payoff or the Revised Maturity Date set forth in Section 2 below. In addition to the Original Principal Balance and Deferred Amount, Borrower is also responsible for any unpaid late fees, which are reflected on the monthly billing statement.

2. **Repayment Terms**: Borrower promises to pay the Unpaid Principal Balance, plus interest, to the Lender according to the following terms:

| | |
|---|---|
| Temporary Interest Rate | 11.95 % |
| Temporary Interest Rate Start Date | 04/02/2010 |
| Temporary Monthly Payment<br>(not including monthly insurance premiums or escrow, if applicable) | $ 444.83 |
| Due Date of First Temporary Monthly Payment | 04/12/2010 |

After the Temporary Interest Rate expires, Borrower agrees to pay the remaining unpaid balance, plus interest, to the Lender according to the following terms:

| | |
|---|---|
| Restored Interest Rate | 12.00 % |
| Restored Interest Rate Effective Date | 08/13/2010 |
| Restored Monthly Payment<br>(not including monthly insurance premiums or escrow, if applicable) | $ 445.92 |
| Due Date of First Restored Payment | 09/12/2010 |
| Revised Maturity Date | 08/12/2024 |

The Revised Maturity Date is based upon the principal balance projected to exist at the time the Temporary Interest Rate expires and the Restored Monthly Payment, and assumes Borrower makes timely payments as scheduled without future modification of the remaining loan terms. All amounts still owed by Borrower under the Note and Security Instrument, including any unpaid Deferred Amounts under this Agreement or any prior Adjustment of Terms Agreement(s), are due and payable on the Revised Maturity Date. In the event Borrower has failed to make all required payments prior to the Restored Interest Rate Effective Date, Borrower's past due payments and interest will be calculated under the original terms of the original Note. Borrower will be required to pay the past due amounts in order to bring the account current.

3. Additional Terms:

a. If the Note is a precomputed loan, it is hereby converted to an interest bearing loan, which means simple interest will accrue on the Unpaid Principal Balance each day until the loan is paid in full.

b. If the Note is a variable rate loan, it is hereby converted to a fixed rate loan and the payment and interest rate will not increase or decrease other than as provided for in this Agreement, for the remainder of the life of the loan.

c. By executing this Agreement, Borrower waives any rate reduction to which Borrower may have otherwise been entitled under the terms of the Note, any Rate Reduction Rider or similar rider to the Note.

d. Although the loan has been modified and the original loan term has been adjusted, this does not change the amount of coverage or terms of the insurance originally written in connection with Borrower's loan. For those who purchased a monthly insurance product, the monthly premium will be added to the monthly loan amount described in paragraph 2 and will be indicated on the monthly statements. Purchased insurance coverage remains in force according to the original certificate or policy issued regardless of any rescheduling and/or adjustment of loan payments or extension by Lender. Further, the insurance may not cover as much of the debt and/or loan payment as it might have before the loan was rescheduled, adjusted or extended and the insurance may expire before the loan is paid in full.

e. If Borrower currently participates in automated payments, Lender may continue automatic drafts for the payment amount agreed to under the original Note unless Borrower requests that Lender update the automatic draft to withdraw the temporarily lower payment agreed to by the parties in this Agreement. Borrower may be required to re-enroll in automated payments if Borrower wishes to make the payments under this Agreement automatically. If Borrower is enrolled in automated payments through the Lender, the amount of the automatic draft contained in the payment draft will automatically increase upon the scheduled increase in the loan payment as described in this Agreement.

f.  It is the intention of the parties that all liens and security interests described in the Security Instrument, if any, are hereby renewed and extended until the Indebtedness evidenced by the Note, as renewed, modified and extended hereby has been fully paid. Lender and Borrower agree that such extension, renewal, amendment, modification, or rearrangement shall in no manner affect or impair the Note or the lien and security interests securing the same, if any, the purpose of this Agreement being simply to extend, modify, amend or rearrange the time and manner of payment of the Note and the indebtedness evidenced thereby, and to carry forward all liens and security interests securing the Note, if any, which are expressly acknowledged by the Borrower to be valid, subsisting and in full force and effect so as to fully secure the payment of the Note. The Borrower expressly waives the benefit of any and all statutes of limitation which might otherwise inure to the Borrower's benefit, or be in any way applicable to the Borrower's obligations under the terms of any and all instruments described herein.

g.  As amended hereby, the provisions of the Note and Security Instrument, if any, shall continue in full force and effect, and the Borrower acknowledges and reaffirms Borrower's obligations to Lender thereunder. In the event of an inconsistency between this Agreement and the terms of the Note and Security Instruments, if any, this Agreement shall govern. Nothing in this Agreement shall be construed to be a satisfaction or release in whole or in part of the Note and Security Instrument, if any. Except as specifically provided for in this Agreement, the Note and Security Instruments, if any, will remain unchanged and the Borrower and Lender will be bound by, and comply with, all of the terms and provisions thereof, as amended by this Agreement. Any default by the Borrower in the performance of its obligations under this Agreement shall constitute a default under the Note and Security Instrument, if any, and shall allow Lender to exercise all of its remedies set forth in the Note and/or Security Instrument.

h.  In the event the Restored Interest Rate Effective Date is scheduled to occur later than the original maturity date of the Note, the post-maturity rate prescribed in the Note will be applied in accordance with the Note and the restored terms will cease as of the date of the original maturity date of the Note. In no event will the Borrower's interest rate be higher than the current effective rate under this agreement.

i.  Borrower acknowledges that the monthly payments on the Note, as modified and set forth in this Agreement, do not include any required escrow payments for taxes and insurance or other payments. Borrower acknowledges and agrees that in the event that Escrow Advances are included in the amount owed set forth in this Agreement and such Escrow Advances are returned to the Lender for any reason, then the amount of such Escrow Advances returned to the Lender may be applied to Borrower's escrow account, to reduce the amount of the Unpaid Principal Balance, and/or to reduce the amount of the Deferred Amount, at the Lender's sole discretion, regardless of whether those Escrow Advances are placed in the Unpaid Principal Balance or in the Deferred Amount under this Agreement.

j.  Nothing in this Agreement shall be construed to impose personal liability to repay any obligation under the Note, as modified by this Agreement, on any Borrower whose obligations have been discharged in Bankruptcy.

k.  Borrower acknowledges that the Deferred Amount set forth above may not be reflected in the loan amount reported by Lender to any credit reporting agency or reported as part of the balance on any receipt or statement issued by Lender, but nevertheless, Borrower acknowledges that such Deferred Amount is due and payable as set forth above.

l.  No Oral Agreements: The written Loan Agreements represent the final agreements between the parties and may not be contradicted by evidence of prior, contemporaneous, or subsequent oral agreements of the parties. There are no unwritten oral agreements between the parties.

Borrower JAMES  L  BEAUCHAMP

Borrower JOCELYN  M  BEAUCHAMP

LENDER
CitiFinancial

By:

# Delaware

Page 1

## The First State

I, JEFFREY W. BULLOCK, SECRETARY OF STATE OF THE STATE OF DELAWARE, DO HEREBY CERTIFY THE ATTACHED IS A TRUE AND CORRECT COPY OF THE CERTIFICATE OF AMENDMENT OF "BAYVIEW LOAN SERVICING, LLC", CHANGING ITS NAME FROM "BAYVIEW LOAN SERVICING, LLC" TO "COMMUNITY LOAN SERVICING, LLC", FILED IN THIS OFFICE ON THE SIXTEENTH DAY OF SEPTEMBER, A.D. 2020, AT 8:54 O`CLOCK A.M.

AND I DO HEREBY FURTHER CERTIFY THAT THE EFFECTIVE DATE OF THE AFORESAID CERTIFICATE OF AMENDMENT IS THE TWENTY-EIGHTH DAY OF SEPTEMBER, A.D. 2020.



Jeffrey W. Bullock, Secretary of State

Authentication:

Date: 09-17-20

You may verify this certificate online at corp.delaware.gov/authver.shtml

# STATE OF DELAWARE
# CERTIFICATE OF AMENDMENT

1.    Name of Limited Liability Company: Bayview Loan Servicing, LLC

_____

2.    The Certificate of Formation of the limited liability company is hereby amended as follows:

> Bayview Loan Servicing, LLC is changing its name to Community Loan Servicing, LLC effective September 28, 2020

**IN WITNESS WHEREOF**, the undersigned have executed this Certificate on the 29th day of July, A.D. 2020.

By: *Brian E. Bomstein*
77E51620648D4B9...
Authorized Person(s)

Name: Brian E. Bomstein
Print or Type

State of Delaware
Secretary of State
Division of Corporations
Delivered   08:54 AM 09/16/2020
FILED   08:54 AM 09/16/2020



| Pmt Type | Transaction Date | Post Funds Received | Credit No PCN Filed | Post-Peition Amount Due | Post Due Date | +/_ Post Suspense | Debtor Suspense Balance |
|---|---|---|---|---|---|---|---|
| | BK Filed | | 7/6/2020 | | | | $0.00 |
| Post | 10/27/20 | $547.99 | | $547.99 | 09/12/20 | $0.00 | $0.00 |
| Post | 11/27/20 | $547.99 | | $547.99 | 10/12/20 | $0.00 | $0.00 |
| Post | 12/29/20 | $547.99 | | $547.99 | 11/12/20 | $0.00 | $0.00 |
| Post | 01/27/21 | $547.99 | | $547.99 | 12/12/20 | $0.00 | $0.00 |
| | | | | | | $0.00 | $0.00 |
| | | | | | | $0.00 | $0.00 |